# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JOE A. KANNIKAL, | ) | Case No. 3:12-cv-220 |
| --- | --- | --- |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| MATTHEW WHITAKER, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

This case arises from Plaintiff Joe A. Kannikal's ("Plaintiff") employment with, and subsequent termination by, the Federal Bureau of Prisons (the "BOP") at the Federal Correctional Institution in Loretto, Pennsylvania ("FCI Loretto"). Plaintiff, who was born in India, alleges that he was discriminated against throughout his employment at FCI Loretto based on his race, his national origin, and in retaliation for filing a discrimination complaint with the Equal Employment Opportunity Commission (the "EEOC"). He brings suit against the Attorney General of the United States ("Defendant").

This Memorandum Opinion does not delve deeply into these allegations. Instead, it focuses on a discovery dispute between the parties that culminated in the filing of Plaintiff's Motion to Compel (ECF No. 107). Oral argument has been held on this Motion (*see* ECF No. 114) and it is now ripe for disposition. For the reasons that follow, Plaintiff's Motion to Compel (ECF No. 107) is **DENIED**.

---

[1] The Court notes that, pursuant to Federal Rule of Civil Procedure 25(d), acting Attorney General Matthew Whitaker is automatically substituted for now-former Attorney General Eric Himpton Holder, Jr. Fed. R. Civ. P. 25(d).

## I. Jurisdiction & Venue

This Court has subject matter jurisdiction over Plaintiff's claims, which arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the alleged events and omissions giving rise to Plaintiff's claims occurred in the Western District of Pennsylvania at FCI Loretto.

## II. Background[2]

On June 25, 2012, Plaintiff filed an Amended Complaint (ECF No. 6). In the Amended Complaint, Plaintiff, who was born in India (*id.* ¶ 7), brought claims under Title VII of the Civil Rights Act of 1964 for race discrimination, national origin discrimination, and retaliation. (*Id.* ¶¶ 1-3.) These claims are based on the following factual allegations.

According to the Amended Complaint, Plaintiff was employed by the BOP at FCI Loretto as a physician's assistant ("PA") in 1988. (*Id.* ¶ 9.) During his initial tenure at FCI Loretto, Plaintiff allegedly heard another PA, Jeff Trimbath ("Trimbath"), refer to him and another Indian doctor as "dumb Indians." (*Id.* ¶¶ 11-12.) Plaintiff changed employment for unrelated reasons, and in 1992, he again applied for a PA position at FCI Loretto. (*Id.* ¶¶ 15, 21.) By this time, Trimbath had been promoted. (*Id.* ¶ 22.) Trimbath allegedly used his new position to withhold Plaintiff's PA application from the Personnel Office (*id.* ¶ 23), and later recommended that Plaintiff not be hired (*id.* ¶ 24). Plaintiff was not hired, and Trimbath allegedly told Plaintiff that he was not

---

[2] The facts in most of this section come from Plaintiff's Amended Complaint (ECF No. 6). Because of this case's extensive factual and procedural history and the parties' intimate familiarity with this history, the Court only includes enough background information here as is necessary for the disposition of the present Motion.

2

hired because he is Indian. (*Id.* ¶¶ 25-27.) In response, Plaintiff filed a discrimination complaint against the BOP with the EEOC. (*Id.* ¶ 33.)

In 1995, an EEOC administrative law judge issued a decision finding that the BOP discriminated against Plaintiff based on his race and national origin. (*Id.* ¶ 35.) The EEOC's Office of Federal Operations then ordered the BOP to hire Plaintiff as a PA at FCI Loretto or another BOP facility. (*Id.* ¶ 38.) Pursuant to this mandate, Plaintiff was hired as a PA at FCI Loretto in 1998. (*Id.* ¶ 41.) Plaintiff alleges that after he was hired at FCI Loretto, he was assigned to be supervised by Trimbath; was not granted medical privileges to write prescriptions and examine patients; and was forced to perform the job of a correctional officer instead of a PA. (*Id.* ¶¶ 43-67.) In 1999, Plaintiff was terminated by the BOP. (*Id.* ¶¶ 69-70.)

After Plaintiff filed his Amended Complaint on June 25, 2012, Defendant filed a Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment (ECF No. 26) and corresponding brief in support (ECF No. 27). Plaintiff filed a Response and Brief in Opposition (ECF Nos. 48, 49), to which Defendant replied (ECF No. 52). On March 10, 2014, this Court granted Defendant's Motion to Dismiss with prejudice on statute of limitations grounds. (ECF No. 56.) Plaintiff appealed. (ECF No. 57.) In January 2015, the Court of Appeals for the Third Circuit vacated this Court's dismissal of the Amended Complaint and remanded the case to this Court for further proceedings. (*See* ECF Nos. 59, 60.)

Following remand, Defendant filed an Answer (ECF No. 78) on November 6, 2015. In the Answer, Defendant asserted, among other defenses, that its actions taken concerning Plaintiff were done for legitimate reasons. (ECF No. 78 at 9.) The parties then began to engage in

3

extensive discovery. No issues arose until the filing of the present Motion to Compel (ECF No. 107) on October 3, 2018. The Court held oral argument on this Motion on November 19, 2018. (*See* ECF No. 114.)

In the Motion to Compel, Plaintiff sought to compel Defendant to produce documents responsive to the following request:

> **"Any and all DOCUMENTS RELATING TO and/or REGARDING malpractice claims by prisoners (or those acting on behalf of prisoners) against the Bureau of Prisons and/or specifically Dr. Daniel Leonard, Dr. Jae Shim, Scott Middlekauff, Michael Condor, Traci Tyger, Cynthia Cunningham, Steven Burk, Stephanie Hoover, Robin Golden, James Krepps, and Jeffrey Trimbath at FCI Loretto from January 1, 1998 to December 31, 2010. This includes but is not limited to any written claims alleging malpractice, whether a complaint was filed or not, any complaints filed on the claims, and any documents showing the amount paid off on any such claim." Only documents regarding written claims of malpractice need to be produced."**

(ECF No. 107 at 2.) Defendant objected to the request for production, claiming it was overbroad, irrelevant, unduly burdensome, and disproportionate to the needs of the case. (ECF No. 107-2.)

At oral argument, Plaintiff narrowed the issue before the Court. Plaintiff stated that Defendant underwent a search and located fifteen malpractice claims by prisoners that are responsive to Plaintiff's request. Defendant provided Plaintiff with the SF-95 form[3] for each of the claims. However, Defendant refused to produce the boxes of archived documents related to the claims. Plaintiff now desires to compel production of these boxes of documents.

---

[3] SF-95s are apparently the forms individuals use to make tort claims against the United States pursuant to the Federal Tort Claims Act.

4

Plaintiff claimed at oral argument that these documents are relevant for two reasons: (1) documents regarding other PAs' alleged medical malpractice are relevant if those PAs were treated more leniently when they misdiagnosed prisoners compared to Plaintiff;[4] and (2) documents regarding Dr. Leonard, the Clinical Director at FCI Loretto who "berated and demeaned Plaintiff" in front of staff, patients, and other supervisors "for the purpose of humiliating and discrediting him" (ECF No. 6 ¶¶ 54-55), are relevant because Dr. Leonard challenged Plaintiff's medical competence, placing Dr. Leonard's own medical competence at issue.

In response, Defendant explained that the boxes contain files for each SF-95 form, as well as any other documents sent to the archives at the same time. Each file includes the SF-95, investigative documents, and a document indicating whether the United States accepted or denied the claim upon investigation.[5] Defendant argued that (1) it already produced the SF-95s; (2) the investigative documents were prepared in anticipation of litigation and are thus protected attorney work product; and (3) it would be unduly burdensome to produce the claim acceptance/denial, as each box contains every document sent to the archives at a particular time and all those documents would need to be reviewed to locate the relevant files and pull the claim acceptance/denial document.

Furthermore, Defendant explained that the requested materials are irrelevant, as the fifteen SF-95s involve FCI Loretto employees who are not comparable to Plaintiff. For example, many

---

[4] Plaintiff wishes to use the other PAs as "comparators" or "similarly situated individuals" to show that Defendant's alleged non-discriminatory reasons for firing Plaintiff are pretext for discrimination.
[5] Defendant explained at oral argument that all of the claims identified in this case were denied.

5

of the employees were hired well after Plaintiff was fired. Further, Drs. Leonard and Shim, whom some of the claims involve, were not PAs like Plaintiff and are therefore not similarly situated individuals.

### III. Legal Standard

Federal Rule of Civil Procedure 26 provides the general framework for discovery in federal civil litigation. Rule 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A matter is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." *See* Fed. R. Evid. 401. In determining whether discovery is proportional to the needs of the case, courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(l).

Rule 37 provides the mechanism to compel discovery from a person or party who refuses to provide discovery. The party moving to compel discovery under Rule 37 bears the initial burden of proving the relevance of the material requested. *See Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001) (citations omitted). If the movant meets this initial burden, then the burden shifts to the person resisting discovery to establish that discovery of the material requested is inappropriate. *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417

(E.D. Pa. 1996) (citation omitted). The person resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient. *See Josephs v. Harris Corp.*, 677 F.2d 985, 991-92 (3d Cir. 1982).

## IV. Discussion

Plaintiff failed to establish that the requested boxes of materials are relevant, either in his Motion or at oral argument, which is the threshold requirement for a motion to compel. Generally, "[i]n the employment discrimination context[,] it can hardly be disputed that discovery directed to similarly situated employees is relevant." *Provine v. Ambulatory Health Servs., Inc.*, Civil Action No. 4:13-CV-0334, 2014 WL 47771, at *2 (M.D. Pa. Jan. 6, 2014). Here, however, Plaintiff failed to establish that any of the employees on which he requested information were similarly situated to him. He also failed to articulate any other reason why the documents he requests are relevant.

Dr. Leonard and Dr. Shim, who were not PAs like Plaintiff (*see, e.g.*, ECF No. 6 ¶ 49), are clearly not similarly situated. *See Red v. Potter*, 211 F. App'x 82, 83 (3d Cir. 2006) (stating that "in order to show that an employee is 'similarly situated,' all of the relevant aspects of employment need to be nearly identical" (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994))); *Terrell v. City of Harrisburg Police Dep't*, 549 F. Supp. 2d 671, 681 (M.D. Pa. 2008) (explaining that "[s]imilarly situated employees are those who 'have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct

7

or the employer's treatment of them for it'" (quoting *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 603 (M.D. Pa. 2002))). Plaintiff offered no other reason why documents relating to Dr. Shim's alleged malpractice would be relevant. Documents relating to Dr. Shim are thus beyond the appropriate scope of discovery.

Moreover, Plaintiff's argument that Dr. Leonard put his own medical competence at issue is unavailing. Plaintiff contended at oral argument that because Dr. Leonard challenged Plaintiff's medical competence in various ways, Plaintiff is entitled to request evidence that could show that Dr. Leonard failed to comply with his own standard of competence. Though potentially morally appealing, this argument is legally uncompelling—it is simply an attempt to paint Dr. Leonard in a negative light, which does not have any tendency to make Plaintiff's discrimination or Defendant's non-discriminatory reason for firing Plaintiff more or less probable. *See* Fed. R. Evid. 401. Thus, the boxes of information sought by Plaintiff regarding Dr. Leonard are not relevant and are beyond the appropriate scope of discovery.

With regard to the other individuals identified by Plaintiff in his discovery request, Plaintiff has not established that any of these individuals are appropriate comparators. Plaintiff's only explanation at oral argument regarding these individuals was that they were PAs and are relevant as similarly situated individuals. However, a declaration submitted by Defendant indicates the following: (1) Scott Middlekauf and Robin Golden were not BOP employees and have no personnel records, although they "may have been United States Public Health Services (USPHS) officers assigned to work in BOP facilities" (ECF No. 109-3 ¶ 13); and (2) Cynthia Cunningham, Steven Burk, Stephanie Hoover, and James Krepps were all employed

8

as PAs at FCI Loretto, but were not hired until over four years after Plaintiff was terminated (*id.* ¶¶ 9-12). Furthermore, Trimbath, according to Plaintiff's Amended Complaint, was promoted to a supervisory position before Plaintiff began working for the second time at FCI Loretto (ECF No. 6 ¶¶ 22, 43).

Based on this information, none of these individuals are sufficiently similarly situated to Plaintiff to be comparators. Middlekauf and Golden were not BOP employees, and Cunningham, Burk, Hoover, and Krepps were not employed at FCI Loretto during or close in time to Plaintiff's tenure there. Moreover, Trimbath was a supervisor and thus did not hold the same position as Plaintiff. Plaintiff did not dispute these facts or offer his own explanations as to these individuals' relevance, and therefore, Plaintiff has not sustained his relevancy burden.

The remaining individuals, Michael Candor and Traci Tyger, were employed by the BOP as PAs while Plaintiff was employed there. (ECF No. 109-3 ¶¶ 7-8.) However, Plaintiff did not attempt, in his Motion or at oral argument, to explain how Candor and Tyger were similarly situated, aside from the fact that they were PAs at FCI Loretto. He did not indicate whether they dealt with the same supervisor or engaged in the same conduct as Plaintiff, for example. *See Terrell*, 549 F. Supp. 2d at 681.

Therefore, Plaintiff has not met his burden of establishing that the requested materials are relevant and within the appropriate scope of discovery. By searching BOP databases and sources to find the fifteen responsive SF-95 forms and providing those to Plaintiff, Defendant

has clearly complied with its discovery obligations. The Court will not compel Defendant to produce more irrelevant materials.[6]

## V. Conclusion

As explained above, Plaintiff has not met his burden of establishing the relevance of the requested information. Thus, Plaintiff's Motion to Compel (ECF No. 107) will be **DENIED**.

---

[6] Defendant also argued that the production of the boxes would involve privileged materials and would be unduly burdensome. The Court need not address these arguments, as Plaintiff has not met his burden of establishing the relevance of the requested information.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JOE A. KANNIKAL, | ) | Case No. 3:12-cv-220 |
|---|---|---|
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| MATTHEW WHITAKER, | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this 21st day of November, 2018, upon consideration of Plaintiff's Motion to Compel (ECF No. 107) and Defendant's response thereto (ECF No. 109), it is **HEREBY ORDERED** that Plaintiff's Motion to Compel is **DENIED**.

BY THE COURT:

/s/ Kim R. Gibson

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE